Jamel WHATLEY, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA, a municipal corporation, et al., Defendants.

No. CIV.A.98–2961 PLF.

United States District Court, District of Columbia.

Aug. 5, 2004.

Diana Marjorie Savit, Savit & Szymkowicz, LLP, Bethesda, MD, for Plaintiffs.

Laurie Pouzzner McManus, Arlington, VA, Melvin W. Bolden, Jr., Office of Corporation Counsel, D.C., Washington, DC, Laura Elizabeth Jordan, Washington, DC, for Defendants.

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court for consideration of Plaintiff's Motion for an Interim Award of Legal Fees and Expenses. Plaintiffs filed this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, seeking educational services for plaintiff Jamel Whatley from defendant District of Columbia Public Schools ("DCPS"). Plaintiffs now seek certain attorneys' fees and costs related to plaintiffs' efforts to secure an adequate education for Jamel. Upon consideration of the parties' briefs, the Court must deny plaintiffs' motion in its entirety.

## I. BACKGROUND

Plaintiffs filed this action in 1998 seeking relief for defendants' failure to provide special educations services to Jamel consistent with the IDEA. Specifically, plaintiffs sought an order directing DCPS to conduct a due process hearing as required by the IDEA, 20 U.S.C. § 1415(f), which hearing DCPS had failed to provide in a timely manner. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for an Interim Award of Legal Fees and Expenses ("Pls.' Mem.") at 2. After the suit was filed, DCPS completed its evaluations of Jamel and placed him at Prospect–Goding Learning Center. *See id.* The due process hearing took place on October 27, 1999, at which time the hearing officer ordered modifications of the Prospect placement as well as additional testing. Having thus prevailed at the administrative proceedings, plaintiffs sought attorneys' fees and costs under the IDEA. Defendants paid the fees and costs up to the permissible statutory limit provided for in the District of Columbia Appropriation Act of 1999. *See id.* at 3.

Plaintiffs assert that DCPS then failed to implement the hearing officer's determination and that plaintiffs requested a second due process hearing. The parties entered into a settlement agreement prior to the hearing. *See* Pls.' Mem. at 3. Again, plaintiffs requested attorneys' fees and costs for their counsel's efforts, and defendants paid those fees up to the amount allowable under the appropriations fee cap for IDEA cases. *See id.* In the motion currently before the Court, plaintiffs seek (1) the fees and expenses that plaintiffs incurred during the administrative process but that remain unpaid because of the fee caps, in the amount of $12,590.36; and (2) additional fees and costs incurred for recent administrative work on Jamel's behalf and in preparing the instant motion, which are in excess of the fee cap, in the amount of $11,778.36. *See id.* at 4.

## II. DISCUSSION

### A. *Statutory Background*

The IDEA provides that parents who object to their child's educational placement are entitled to an impartial due process hearing, *see* 20 U.S.C. §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel." 20 U.S.C. § 1415(h)(1). Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2). Section 1415(i)(3)(B) of the IDEA gives courts the authority to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party," which includes the authority to award fees to a party who has prevailed in an administrative proceeding. *See Moore v. District of Columbia*, 907 F.2d 165, 166 (D.C.Cir. 1990) (en banc). The amount of fees awarded is based "on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(c).

The House Committee on Appropriations, in considering the District of Columbia's fiscal year 1999 appropriations request, adopted an appropriations rider that limited defendants' fee payments under the IDEA. This so-called fee cap became Section 130 in the D.C. appropriations bill enacted by the Congress and signed by the President. *See Calloway v. District of Columbia*, 216 F.3d 1, 4 (D.C.Cir.) (citing Section 130 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub.L. 102–277, 112 Stat. 2681 (1998) ("Section 130 (1999)")). Congress included that limit, or "cap," in the appropriations acts for fiscal years 1999–2001 and 2003–2004 for actions brought under the IDEA. *See* Section 129 of the

District of Columbia Appropriations Act of 2000, Pub.L. No. 106–113, 113 Stat. 1501, 1517 (1999); Section 122 of the District of Columbia Appropriations Act of 2001, Pub.L. No. 106–522, 114 Stat. 2440, 2464 (2000); Section 144 of the District of Columbia Appropriations Act, 2003, Pub.L. No. 108–7, 117 Stat. 11 (2003); and Section 432 of the Consolidated Appropriations Act, 2004, Pub.L. No. 108–199, 118 Stat. 3 (2004) ("Section 432 (2004)"). In 2000, the court of appeals concluded that while these statutory caps restrict the amount defendants may pay in attorneys' fees brought under the IDEA, they do not restrict the Court's authority to award fees in excess of the cap. *See Calloway v. District of Columbia,* 216 F.3d at 12.

The Appropriations Act of 2002 was different from the other years' appropriations bills. It did not include a cap on IDEA attorneys' fees, but did include a particular restriction of the award of fees. The legislation for that year provided that:

> Notwithstanding 20 U.S.C. 1415, 21 U.S.C.1988, 29 U.S.C. 794a, or any other law, none of the funds appropriated under this Act, or in appropriations Acts for subsequent fiscal years, may be made available to pay attorneys' fees accrued prior to the effective date of this Act that exceeds a cap imposed on attorneys' fees by prior appropriations Acts that were in effect during the fiscal year when the work was performed, or when payment was requested for work previously performed, in an action or proceeding brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. 1400 *et seq.*).

Section 140(a) of the District of Columbia Appropriations Act of 2002, Pub.L. No. 107–96, 115 Stat. 923 (2001) ("Section 140 (2002)").

### B. *The Effect of Buckhannon*

■ As a preliminary matter, the Court concludes that for the reasons stated in its Opinion and Order in *Armstrong v. Vance,* also issued today, plaintiffs may not be awarded any fees sought for their efforts in connection with the second due process hearing request and the attendant settlement agreement because they were not "prevailing parties" under the IDEA in light of the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). *See Armstrong v. Vance,* 328 F.Supp.2d 50, 59, 2004 WL 1763984, Opinion at 16 (D.D.C.2004). Plaintiffs likewise cannot be awarded fees and costs for preparation of the fee request pertaining to the settlement efforts or for counsel's subsequent effort in enforcing the settlement agreement.[1]

### C. *The Effect of the 2002 Appropriations Act on Plaintiffs' Remaining Fee Petitions*

What remains of plaintiffs' application is their claim for those fees and costs that were incurred by counsel during the first due process hearing that remain unpaid because they were in excess of the fee cap. As a preliminary matter, the Court notes that although defendants are no longer operating under the 2002 Appropriations Act, Section 140 (2002) remains relevant because of the provision's prospective language barring use of any future appropria-

---

1. Plaintiffs seek $10.445.63 in fees and costs for counsel's efforts in the administrative proceedings that resulted in the settlement agreement; $530.00 in fees and costs for preparation of the related fee petition; and $1033.50 in fees and costs for subsequent efforts to place Jamel under the settlement agreement. *See* Plaintiffs' Motion for an Interim Award of Legal Fees and Expenses ("Pls.' Mot."), Exs. F–G.

tions to pay for fees and costs incurred prior to the enactment of the 2002 Act in excess of any fee cap in place at the time, a category into which plaintiffs' claims indisputably fall.

In its Opinion in *Armstrong v. Vance*, the Court concluded that Section 140 (2002) precludes the use of funds from subsequent fiscal years to pay for attorneys' fees and costs related to counsel's above-cap efforts in IDEA cases prior to the enactment of the 2002 Act. *See Armstrong v. Vance*, 328 F.Supp.2d 50, 62, 2004 WL 1763984, Opinion at 21 (D.D.C.2004).[2] Although plaintiffs here offer several additional arguments that challenge the prospective language in Section 140 (2002) and the constitutionality of fee caps generally, upon consideration of those arguments the Court's conclusion remains the same.

■ Plaintiffs' first argument is rather unclear. Plaintiffs claim that "[t]he 2002 funding statute is clearly ineffective to the extent that it attempts to bind all future Congresses in perpetuity." *See* Pls.' Mem. at 6. In the paragraphs that follow, plaintiffs appear to be arguing that the Court cannot interpret Section 140 (2002) to preclude all future payment of previously-incurred above-cap fees because in so doing the Court would have to conclude that Congress amended the IDEA through an appropriations act by "severely restricting [plaintiffs'] right to recover their legal fees." Pls.' Mem. at 7. If Congress wanted to continue to bar payment of above-cap special education fees after the 2002 fiscal year, plaintiffs argue, it instead "should have included § 140, or something similar, in the FY2003 appropriations bill." *Id.*

■ Plaintiffs' implicit argument is that because there is a presumption that Congress does not amend statutes through appropriations bills, the Court cannot interpret Section 140 (2002) to be such an amendment. This assertion is incorrect. While the presumption exists that appropriation statutes generally do not amend substantive law, it is only a presumption. *See Calloway v. District of Columbia*, 216 F.3d at 9 ("appropriations acts are 'Acts of Congress' which can substantively change law," although "there is a very strong presumption that they do not") (internal quotation and citation omitted). Moreover, plaintiffs do not actually argue that Congress amended the IDEA with Section 140 (2002), but instead only that the Court should avoid such an analysis. The Court cannot avoid an analysis merely because it works a hardship on these plaintiffs or because Congress may have acted against a legal presumption.

■ Plaintiffs next argue that Section 140 (2002) is unconstitutional on the ground that it violates the separation of powers doctrine. *See* Pls.' Mem. at 7. Plaintiffs contend that a permanent cap on those fees incurred prior to the enactment of the 2002 Act unlawfully usurps the Court's authority "by effectively remov[ing] from the courts all discretion to award fees under a statute that affirmatively gives them this power." *Id.* at 9. The court of appeals expressly decided this question in *Calloway*, however, concluding that Congress "did not use [the fee cap] to limit the power of federal courts to award fees under IDEA." *Calloway v. District of Columbia*, 216 F.3d at 12. It only limited defendants' ability to pay them. *See id.* The court of appeals recognized that this conclusion is somewhat incongruous, but expressly stated that any inconsistency should be resolved by Congress, not by the

---

2. The analysis in *Armstrong* does not apply in Section 1983 cases where Section 140 (2002) by its own terms has no application. *See*

*Watkins v. Vance*, 328 F.Supp.2d 50, 57, 2004 WL 1763922, Opinion at 12 (D.D.C.2004).

Court. *See id.* at 10 ("[R]econciling inharmonious statutory directives is Congress' responsibility, not courts'.").

Plaintiffs also assert that Section 140 (2002) violates the separation of powers doctrine by improperly nullifying *Calloway*. Plaintiffs essentially claim that in *Calloway*, the court of appeals held that if the fee cap ever expired, plaintiffs would be entitled to the remainder of any previous fee petitions that were limited by a cap. *See* Pls.' Mem. at 10. By enacting Section 140 (2002), plaintiffs argue, Congress improperly sought to change the disposition of the *Calloway* case, citing case law for the proposition that Congress may not invalidate final judgments of the courts. *See id.* This argument necessarily fails. While the decision in *Calloway* does not prohibit parties from seeking future payments of past fees, it by no means requires payment if the cap is lifted. The issue of whether plaintiffs have a right to obtain past fee amounts from subsequent years' appropriations simply was expressly left open in *Calloway, see Calloway v. District of Columbia*, 216 F.3d at 12, and Section 140 (2002) therefore cannot deprive the judgment in *Calloway* of its "conclusive effect." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 225, 228, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (holding that a statute expressly directing the reopening of cases dismissed on statute of limitations grounds and requiring the application of new limitations period violated separation of powers doctrine). *See also Saco River Cellular, Inc. v. Federal Communications Commission*, 133 F.3d 25, 31 (D.C.Cir.1998) (separation of powers doctrine not violated if relevant issue not resolved in prior decision).

█ Finally, plaintiffs charge that Section 140 (2002) constitutes a taking in violation of the Fifth Amendment. Plaintiffs argue that prior to the institution of the first fee cap, plaintiffs' counsel agreed to represent plaintiffs on a contingency fee basis, and that she continued to represent plaintiffs after the fee cap was enacted because counsel had an interest in and a reasonable expectation that she some day could collect the remainder of any fees and costs if and when the fee cap expired; this reasonable expectation was based on both *Calloway* and on the temporary, yearly nature of the fee caps. *See* Pls.' Mem. at 12–13. Plaintiffs cite this Court's decision in *Calloway*, in which the Court concluded that the fee cap did not apply retroactively to work performed prior to the enactment of the cap because "plaintiffs had a settled expectation that if they prevailed under the IDEA ... they would recover reasonable attorneys fees at a rate prevailing in the community" rather than fees limited by a statutory cap. *Calloway v. District of Columbia*, Civil Action No. 99–0037, 1999 U.S. Dist. LEXIS 13751, at *4 (D.D.C. May 14, 1999). This reliance is misplaced.

This Court's decision not to apply the cap to fees incurred prior to enactment of the cap was not grounded in constitutional law, but in the doctrine related to the retroactive application of statutes. *See Calloway v. District of Columbia*, 1999 U.S. Dist. LEXIS 13751, at *4. In addition, as discussed *supra*, while the court of appeals' decision in *Calloway* did not preclude counsel from seeking above-cap fees if the cap were lifted, the court of appeals did not hold that such an avenue for additional recovery must exist. *See Calloway v. District of Columbia*, 216 F.3d at 12. Contrary to plaintiffs' position, the *Calloway* decision, even coupled with the "temporary" nature of appropriation act fee caps, is not sufficient to create a property interest in the excess fees, the denial of which constitutes a taking. Section 140 (2002) permanently caps the amount of fees counsel may collect for pre–2002 Appropriations Act efforts, but it does not rise to the level of a taking. Based on the

foregoing, the Court therefore will deny plaintiffs' motion for fees. A separate Order consistent with this Memorandum Opinion shall issue this same day.

SO ORDERED.

### ORDER

For the reasons stated by separate Memorandum Opinion issued this same day, it is hereby

ORDERED that Plaintiff's Motion for an Interim Award of Legal Fees and Expenses [114-1] is DENIED; and it is

FURTHER ORDERED that this Order constitutes a final appealable Order. *See* FED. R. APP. P. 4(a).

SO ORDERED.